TYMKOVICH, Circuit Judge,
dissenting.
The question in this appeal is whether Santistevan properly invoked his right to counsel. The facts are undisputed. Upon arriving at the jail, Agent Eicher asked, “Do you have a letter in your possession?” In response, Santistevan handed over a letter written by his attorney. The letter reported the attorney’s understanding that Santistevan did not want to speak to law enforcement in the absence of an attorney. But Santistevan said nothing to Agent Eicher regarding whether his attorney’s letter accurately reflected his own wishes. Agent Eicher then asked a clarifying question — “You have been advised by an attorney not to talk to me today, but it’s totally up to you on whether you want to talk to me or not. Do you want to come back to my office and answer questions about these robberies?” — and in response Santistevan stated he wanted to speak to authorities. In my view, Agent Eicher properly respected Santistevan’s constitutional right to counsel, and Santistevan properly exercised his right to waive counsel and speak to police. I therefore dissent.
The majority concludes Santistevan’s failure to speak when handing over the letter amounted to a clear and unequivocal invocation of the right to counsel. But I believe the only conclusion we can draw is that Santistevan’s silence, especially in light of the question Eicher asked, created an ambiguity. In the face of such ambiguity, a police officer had no duty to cease questioning. At a minimum, the officer could permissibly ask clarifying questions, as Eicher did. Santistevan responded to those clarifying questions by knowingly and intelligently waiving his right to counsel. Accordingly, I would reverse the district court’s suppression order.
I.
No one disputes that Santistevan invoked his right to remain silent when Agent Eicher first arrested Santistevan. In such a situation, “the interrogation must cease,” Miranda v. Arizona, 384 U.S. 436, 474, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966) — as it did here — and the police may not attempt to continue questioning the suspect unless:
(1) at the time the defendant invoked his right to remain silent, the questioning ceased; (2) a substantial interval passed before the second interrogation; (3) the defendant was given a fresh set of Miranda warnings; and (4) the subject of the second interrogation [is] unrelated to the first.
*1296 Michigan v. Mosley, 423 U.S. 96, 104-05, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975).
But the Mosley test “is inapplicable ... if the suspect, and not the police, reinitiates contact and agrees to questioning.” United States v. Alexander, 447 F.3d 1290, 1294 (10th Cir.2006). This exception traces back to Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981), where the Supreme Court held that police must stop questioning a suspect who invokes his Miranda rights unless “the [suspect] himself initiates further communication, exchanges, or conversations with the police.” Id. at 485, 101 S.Ct. 1880.[1]
Given that the majority upheld the district court’s suppression order based on Santistevan’s act of handing his attorney’s letter to Agent Eicher, the majority does not address the third-party reinitiation question because the result would be the same (suppression) whether or not the majority disagrees with the district court’s holding on third-party reinitiation. Maj. Op. at 1293 n. 4. Because I disagree with the majority on the significance of Santistevan’s attorney’s letter, I reach the third-party reinitiation question, and I would affirm the district court in that respect.
The circuits that have reviewed the issue agree that Edwards permits a suspect to reinitiate contact through a third party. The most elaborate discussion is in Van Hook v. Anderson, 488 F.3d 411 (6th Cir.2007) (en banc), cert. denied, 552 U.S. 1023, 128 S.Ct. 614, 169 L.Ed.2d 396 (2007), which held that “[w]hen the police receive information that a suspect wants to talk; when there is a sufficient basis for believing its validity; and when the police confirm with the suspect the validity of that information,” then “the suspect has adequately evinced a willingness and a desire to talk with them,” id. at 424-25.
Other circuits have similarly concluded that Edwards accommodates third-party reinitiation, or at least (on habeas review) that admitting a confession obtained through such circumstances is not contrary to clearly established law. See Owens v. Bowersox, 290 F.3d 960 (8th Cir.2002), cert. denied, 537 U.S. 1035, 123 S.Ct. 553, 154 L.Ed.2d 455 (2002); United States v. Michaud, 268 F.3d 728 (9th Cir.2001), cert. denied, 537 U.S. 867, 123 S.Ct. 271, 154 L.Ed.2d 113 (2002); United States v. Gonzalez, 183 F.3d 1315 (11th Cir.1999), cert. denied, 528 U.S. 1144, 120 S.Ct. 996, 145 L.Ed.2d 943 (2000), abrogated on other grounds as recognized in United States v. Diaz, 248 F.3d 1065 (11th Cir.2001).
Relying on the logic of these decisions, the district court concluded that third-party reinitiation in Santistevan’s case was appropriate. I agree with this conclusion. In particular, I would hold that third-party reinitiation raises no Miranda problems in the circumstances here. Given that Eicher was not working with Santistevan’s girlfriend to obtain Santistevan’s consent to questioning, and that Eicher received sufficiently reliable information through the girlfriend that Santistevan wished to talk, Eicher appropriately returned to the jail with the intent to resume questioning.
Before moving to the primary question here, I also would affirm the district court’s conclusion that the suspect must personally invoke his right to counsel in these circumstances. See, e.g., United *1297 States v. Muick, 167 F.3d 1162, 1166 (7th Cir.1999) (holding that “the [suspect’s] attorney’s letter and phone call [to police stating that his client would not talk without a lawyer] were insufficient to invoke the Miranda right to counsel. Only [the suspect] could invoke his Miranda right to counsel.” (citations omitted)); State v. Hanson, 136 Wis.2d 195, 401 N.W.2d 771, 778 (1987) (holding that a letter written from the suspect’s attorney to police instructing them not to talk with the suspect without the attorney present did not suffice to invoke the suspect’s Miranda rights: “no one but the accused can make the decision to make a statement to the police or to ask for the assistance of counsel in making his decision”).[2] In particular, Santistevan’s attorney could not invoke his right to counsel as she spoke with Agent Eicher over the phone.
Although attorneys generally speak for their clients, they do not necessarily do so in this context, and for sound reasons. Our justice system has no interest in establishing unnecessary barriers to cooperation with and confession to the police. See, e.g., Minnick v. Mississippi 498 U.S. 146, 155, 111 S.Ct. 486, 112 L.Ed.2d 489 (1990) (“Both waiver of rights and admission of guilt are consistent with the affirmation of individual responsibility that is a principle of the criminal justice system.”). We can safely assume, however, that if attorneys may speak for their clients on the question of whether to invoke Fifth Amendment rights, lawyers will — out of understandable caution — nearly always invoke those rights. This would unnecessarily frustrate the police’s legitimate desire to seek cooperation.
Exceptions might exist for suspects who are somehow incapable of communicating their desire for counsel, but that is not this case. Santistevan had no incapacity that prevented him from communicating his desire for an attorney directly to Eicher. Exceptions might also exist where everyone involved simply understands that the attorney is reporting the client’s decision to invoke his right to counsel rather than making the decision for the client. Cf. Brewer v. Williams, 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (upholding district court’s conclusion that suspect had not waived his Sixth Amendment right to counsel given his constant interaction with his attorneys and their subsequent insistence to the police that they should not question the suspect); Bigby, 21 F.3d at 1063 (upholding attorney-invoked right to silence where “the questioning party [did] not contemporaneously challenge the manner in which the privilege was raised, and all present including the presiding judge assume[d] the privilege ha[d] been invoked”).
But the distinction between reporting a client’s decision and invoking on the client’s behalf creates the potential for ambiguity from the police’s perspective. The Supreme Court over the last twenty years has consistently chosen not to place the burden of ambiguity on the police. See, e.g., Berghuis v. Thompkins, — U.S. —, 130 S.Ct. 2250, 2260, 176 L.Ed.2d 1098 (2010) (holding that a suspect “who wants to invoke his or her right to remain *1298 silent [must] do so unambiguously”); Davis v. United States, 512 U.S. 452, 459, 114 S.Ct. 2350, 129 L.Ed.2d 362 (1994) (holding that Edwards does not require the police to cease questioning unless “the suspect ... unambiguously requests] counsel”).
At a minimum, then, if there exists a distinction between reporting a suspect’s decision and invoking on the suspect’s behalf, the police should be permitted to ask the suspect directly whether the lawyer accurately reported the suspect’s decision. This is what Eicher did when he eventually arrived at the jail and inquired regarding Santistevan’s intentions.
Accordingly, no matter how we look at Santistevan’s situation, his attorney’s phone call to Eicher as Eicher drove to the jail did not invoke his Fifth Amendment right to counsel.
II.
Turning to whether Santistevan’s act of handing his lawyer’s letter to Eicher at the jail invoked his right to counsel, I agree we start with Davis v. United States.
In Davis, the Supreme Court announced that equivocal or ambiguous invocations of the right to counsel do not trigger the Edwards rule. Rather, the suspect must “articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney.” 512 U.S. at 459, 114 S.Ct. 2350. “But if a suspect makes a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel,” the police may continue questioning. Id. (emphasis in original).
Thus, the question here is whether Santistevan unambiguously requested counsel. “When reviewing an invocation of the right to counsel, specifically, we review for clear error the district court’s factual findings concerning the words a defendant used in invoking the right to counsel. WTiether those words actually invoked the right to counsel is a legal determination, reviewed de'novO.” United States v. Zamora, 222 F.3d 756, 765 (10th Cir.2000) (internal quotation marks omitted).
It bears repeating here the entire portion of Agent Eicher’s testimony on which the district court based its conclusion that Santistevan had unambiguously requested counsel:
Q. So after speaking to [Santistevan’s defense attorney on the way to the jail], you proceeded to the jail?
A. That’s correct, I did.
Q. Okay. And then did you speak with Mr. Santistevan?
A. I did. When I arrived at the jail I advised Mr. Santistevan that I had talked to an attorney that claimed to be representing him. And I asked if he had a letter in his possession. And he did, and he handed me the letter. I read the letter. I made a photocopy at that point, gave the letter back to Mr. Santistevan.
Then I asked Mr. Santistevan, I said: You have been advised by an attorney not to talk to me today, but it’s totally up to you on whether you want to talk to me or not. Do you want to come back to my office and answer questions about these robberies?
And he said, Yes, he did.
And I said: Are you sure, without a lawyer present?
And he said: Yes, I want to.
*1299 So then we transported him back to [Eicher’s office].
App. 145-46.
Santistevan could have testified to his own side of the story without waiving his Fifth Amendment rights. See Fed.R.Evid. 104(d) (“By testifying on a preliminary question, a defendant in a criminal case does not become subject to cross-examination on other issues in the case.”); cf. Simmons v. United States, 390 U.S. 377, 394, 88 S.Ct. 967, 19 L.Ed.2d 1247 (1968) (“when a defendant testifies in support of a motion to suppress evidence on Fourth Amendment grounds, his testimony may not thereafter be admitted against him at trial on the issue of guilt unless he makes no objection”). But Santistevan put on no evidence of any kind at the suppression hearing. Accordingly, this testimony from Eicher is the sum total of evidence from which to conclude whether Santistevan invoked his right to counsel.[3]
The district court reasoned as follows to conclude that Santistevan’s act of handing his attorney’s letter to Eicher unambiguously invoked the right to counsel:
The Court finds that, by handing attorney Spengler’s letter to Agent Eicher, Defendant affirmatively and unequivocally invoked his right to counsel. Defendant could have declined to present Agent Eicher the letter or could have told the Agent that he dissociated himself from the contents of the letter. Defendant also could have volunteered that despite the statement in the letter, he did, in fact, wish to be questioned. However, Defendant did none of those things. He simply handed the letter— which clearly stated that he did not wish to speak with Agent Eicher without his attorney present — to Agent Eicher, and by so doing ratified the contents of that letter as his own personal communication to the Agent.
App. 126-127.
The district court based its conclusion entirely on what Santistevan could have said but did not when he handed the letter to Eicher. For multiple reasons, this is insufficient to conclude that Santistevan invoked his right to counsel. First, the district court’s analysis loses track of the overarching question: whether Santistevan “articulate[d] his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney,” rather than “mak[ing] a reference to an attorney that is ambiguous or equivocal in that a reasonable officer in light of the circumstances would have understood only that the suspect might be invoking the right to counsel.” Davis, 512 U.S. at 459, 114 S.Ct. 2350 (emphasis in original). When placed in the light of this standard, the district court’s analysis necessarily implies that a reasonable police officer under the circumstances would have taken Santistevan’s silence as unequivocal or unambiguous because of what Santistevan might have said at that point.
But silence cuts in many directions. Santistevan indeed could have “dissociated himself from the contents of the letter,” App. at 126, and he also could have endorsed its contents; he “could have volunteered that despite the statement in the letter, he did, in fact, wish to be questioned,” Id., and he could have volunteered that his attorney’s words accurately reflected his current wishes. But he “did none of those things. He simply handed the letter....” Id.
*1300 It is difficult to see how that amounts to an unambiguous assertion of the right to counsel. It is especially difficult to see how a reasonable police officer is supposed to know that the inference to be drawn from the suspect’s failure to disapprove the letter (ratification) somehow unequivocally overpowers any inference to be drawn from the suspect’s failure to endorse the letter (disagreement).
At best, then, under the facts here the act of handing over the letter and remaining silent created competing inferences— the very definition of an ambiguous situation. The ambiguity is deepened in the context of Agent Eicher’s uncontested account about the reason why Santistevan handed Eicher the letter. Santistevan did not hand over the letter in response to a question regarding whether he wanted counsel. Rather, said Eicher, “When I arrived at the jail I advised Mr. Santistevan that I had talked to an attorney that claimed to be representing him. And I asked if he had a letter in his possession. And he did, and he handed me the letter.” App. 145-46. I disagree with the district court’s conclusion that handing over a letter in response to a request to see the letter is the unequivocal invocation Davis requires.
The majority avoids the effect of Eicher’s first question by characterizing it as an “irrelevant” question of happenstance: “Mr. Santistevan did not forfeit his right to counsel just because the agent happened to speak first.” Maj. Op. at 1298. But imagine if Eicher’s first words had instead been, “Do you want a lawyer before you talk to me?” I doubt the majority would cast aside those words as irrelevant to the question of equivocation.
Our task is to decide whether Santistevan’s conduct — which in this case turned out to be the act of handing over a letter while remaining silent — sufficed to invoke his right to counsel. Surely the question to which a suspect’s conduct responded is relevant to that task.
Given these circumstances, under the majority’s approach, the takeaway is this: law enforcement officers who learn about a letter from an attorney should first secure the suspect’s Miranda waiver before asking to see the letter — or better yet, not ask for the letter at all, thus preventing the supposedly unambiguous act of handing over a letter from ever happening. Accordingly, in upholding Santistevan’s Fifth Amendment rights here, the majority opinion implicitly demonstrates how law enforcement officers in similar situations can easily get around those rights.
But returning to the central question here — whether Santistevan unambiguously invoked his right to counsel — the answer is no. A reasonable officer could question whether the act of handing over the letter in response to a request to see the letter is meant to invoke the right to counsel. Thus, under the Davis and Edwards standards, Eicher had no duty to cease questioning. Accordingly, I would reverse the suppression order.

. Edwards focused on the right to counsel rather than the right to remain silent. It also involved a suspect who had waived his rights and then reasserted them. Nonetheless, we have applied Edwards’s reinitiation exception to right-to-silence cases, including cases where the suspect had not previously waived his rights. See Alexander, 447 F.3d at 1294; United States v. Glover, 104 F.3d 1570, 1580-81 (10th Cir.1997), abrogated on other grounds by Corley v. United States, 556 U.S. 303, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009).

. A few cases are to the contrary, but they are not persuasive. See United States v. Johnson, 752 F.2d 206, 211 n. 3 (6th Cir.1985) ("Although that privilege is personal to the client, it can be invoked on the client's behalf by the attorney.” (citations omitted)); Bigby v. INS, 21 F.3d 1059, 1063 (11th Cir.1994) ("on the particular facts of. this case — i.e., when an attorney invokes the Fifth Amendment on his client's behalf, the questioning party does not contemporaneously challenge the manner in which the privilege was raised, and all present including the presiding judge assume the privilege has been invoked — the invocation of the privilege is effective”).

. I would remand to the district court for further development of the record on the question of whether a custodial interrogation took place at this time.